## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARCUS L. WALLACE,                  :

                **Petitioner**          :

                **v.**                          :

WARDEN ERIC TICE, *et al.*,          :

                **Respondents**      :

      CIVIL ACTION NO. 1:21-0340

      (JUDGE MANNION)

## MEMORANDUM

Petitioner Marcus L. Wallace, an inmate in state custody serving a life sentence without parole, filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Wallace challenges the convictions and sentences imposed by the Court of Common Pleas of Franklin County, Pennsylvania. For the reasons set forth below, the Court will deny Wallace's petition.

I.    BACKGROUND

In the early morning hours of December 10, 2009, Consuella Wallace was attacked in the bedroom of her home in Chambersburg, Pennsylvania, suffering severe injuries to her head. Commonwealth v. Wallace, No. CP-28-CR-0000213-2010, at 3 (Pa. Ct. Comm. Pleas Franklin Cnty. June 5, 2015) (hereinafter "6/5/15 Trial Op."). She died from those injuries two months later, on February 9, 2010. Id. at 4. Dr. Samuel Land, a forensic

pathologist, determined that the cause of death was blunt force trauma to the head and labeled the death a homicide. Id.

During their investigation, state police collected blood from various places inside Consuella's house, including on glass shards from a broken window and from her bedroom wall near a light switch. 6/5/15 Trial Op. at 3-4. Numerous evidentiary factors—including the broken window, cut screen, blood in the hallway and on the stairs, unlocked front door, and footprints in the snow—pointed to the attacker having gained entry to the house through the broken window and then fleeing out the front door. Id. The blood on the broken window glass further indicated that the attacker had cut themselves while in the process of breaking the window. Id. The bloodlifts taken from the broken glass and from the bedroom wall were sent to the Pennsylvania State Police DNA Laboratory for analysis. (See Doc. 1-3 at 3).

In the days following the attack, the police quickly honed in on Wallace—Consuella's adoptive son—as a suspect, as several people close to Consuella informed police that she and Wallace had a "volatile relationship." 6/5/15 Trial Op. at 5; Commonwealth v. Wallace, No. 324 MDA 2015, 2016 WL 5417183, at *1 (Pa. Super. Ct. Aug. 16, 2016). The day after the attack, state police made their first contact with Wallace in Pittsburgh,

Pennsylvania, regarding the December 10 incident. 6/5/15 Trial Op. at 5. Wallace was in custody on an unrelated simple assault charge when the December 11 meeting occurred. Id. Officers noticed cuts on Wallace's hands during this meeting. Id.

On December 15, 2009, officers transported Wallace to the state police barracks in Chambersburg and formally questioned him about the December 10 attack in a recorded interview. Id. The interviewing officers again noticed cuts on Wallace's hands. Id. They interrogated Wallace once more on December 21, this time regarding inconsistencies discovered during their investigation that followed the December 15 interview. Id. at 6. During both formal interviews, Wallace received and waived his Miranda[1] rights. Wallace, 2016 WL 5417183, at *3; Commonwealth v. Wallace, Criminal Nos. 213-2010; 250-2011, at 28 (Pa. Ct. Comm. Pl. Franklin Cnty. Oct. 26, 2018) (hereinafter "10/26/18 PCRA[2] Op.")

According to Pennsylvania State Trooper Michael Dick ("Trooper

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] "PCRA" is the acronym for Pennsylvania's "Post Conviction Relief Act," 42 PA. CONS. STAT. §9541 et seq., the state's corollary to federal habeas corpus relief.

Dick"), forensic scientist Frank Kist from the state police DNA laboratory had telephonically contacted Trooper Dick's department on December 24, 2009. 10/26/18 PCRA Op. at 15; (Doc. 1-3 at 11). During this call, Kist informed the state police that he had run a search in the Combined DNA Index System ("CODIS")[3] with the DNA profile obtained from the bloodlifts taken at the crime scene, which produced a "cold hit" in the system matching Wallace's preexisting DNA profile. 10/26/18 PCRA Op. at 15-16; (Doc. 1-3 at 4). Trooper Dick incorporated this cold hit into his December 28, 2009 affidavit of probable cause for a search warrant to obtain a buccal swab DNA sample from Wallace to confirm the match. 10/26/18 PCRA Op. at 15-16; (Doc. 1-3 at 10-11). Once the buccal swab was obtained, a second DNA report was generated that confirmed the match of Wallace's DNA profile to the profile of the crime-scene bloodlifts. 10/26/18 PCRA Op. at 16.

Initially, Wallace was charged with criminal attempt to commit criminal homicide, aggravated assault, and several other lesser offenses. 10/26/18

---

[3] The CODIS "allows State and local forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system." United States v. Mitchell, 652 F.3d 387, 399 (3d Cir. 2005) (citation omitted).

PCRA Op. at 1; (Doc. 1-3 at 1-2). Following Consuella's death, Wallace was charged with, among other crimes, first- and second-degree murder. 10/26/18 PCRA Op. at 2. In February 2010, Michael J. Toms, Esq. ("Attorney Toms") of the public defender's office entered his appearance on Wallace's behalf. Id. In March 2011, after the Commonwealth filed a Notice of Aggravating Circumstances that triggered capital punishment implications, Michael O. Palermo, Esq. ("Attorney Palermo") was appointed as co-counsel. Id. In October 2012, due to the potential applicability of the death penalty, Attorney Toms' appearance was vacated and Justin J. McShane, Esq. ("Attorney McShane") was appointed as lead counsel. Id. at 3.

Trial was delayed for several years due to various competency hearings, pretrial motions, and continuances. Id. at 3-4. In March 2014, the Commonwealth withdrew its Notice of Aggravating Circumstances, and Attorney McShane moved to withdraw his appearance soon after. Id. at 4. Attorney Palermo remained as defense counsel. Id. at 4 n.11.

On January 26, 2015, a six-day jury trial commenced. Id. At the trial's conclusion, the jury found Wallace guilty of first-degree murder and burglary. Id. That same day, the court sentenced Wallace to life imprisonment without

parole for the first-degree murder conviction and a concurrent term of 10 to 20 years' imprisonment for the burglary conviction.  Id.; Wallace, 2016 WL 5417183, at *1.

## II.   PROCEDURAL HISTORY

Wallace filed a counseled direct appeal raising five issues,[4] whereupon the Superior Court of Pennsylvania affirmed the judgment of sentence. Wallace, 2016 WL 5417183, at *6. The Supreme Court of Pennsylvania denied Wallace's petition for allowance of appeal on March 7, 2017.  Commonwealth v. Wallace, 163 A.3d 712 (Pa. 2017) (table).

Wallace then filed a 264-page *pro se* PCRA petition on January 4, 2018. 10/26/18 PCRA Op. at 5. Attorney Mark Bayley ("Attorney Bayley") was appointed as postconviction counsel. Id. Attorney Bayley ultimately filed

---

[4] On direct appeal, Wallace questioned the sufficiency of the evidence for first-degree murder, asserted a right-to-counsel claim regarding his police interrogations, challenged the reasonableness of the search of the CODIS that produced a "cold hit" identifying Wallace, contended the trial court erred in permitting prior act evidence, and argued that the prosecutor impermissibly misled the jury regarding statistical probabilities related to the DNA evidence. Wallace, 2016 WL 5417183, at *1-5.

a <u>Turner</u>/<u>Finley</u> no-merit letter,[5] maintaining that Wallace's claims were groundless and asking for permission to withdraw as counsel. <u>Id.</u> Wallace filed a 93-page response to Attorney Bayley's <u>Turner</u>/<u>Finley</u> letter, which the PCRA court construed as an amended PCRA petition. <u>Id.</u> at 6. The PCRA court identified 21 claims raised by Wallace—as clarified by Bayley's <u>Turner</u>/<u>Finley</u> letter—and denied each one. <u>Id.</u> at 6 & n.13, 54.

The Superior Court affirmed the PCRA court's denial, relying on the PCRA court's rationale for most of the issues. <u>See</u> Commonwealth v. Wallace, Nos. 51 MDA 2019, 52 MDA 2019, 2019 WL 5966123 (Pa. Super. Ct. Nov. 13, 2019) (table) (hereinafter "11/13/19 PCRA Appeal Op."). The panel provided independent reasoning for only a handful of the claims raised in Wallace's PCRA petition. <u>See</u> 11/13/19 PCRA Appeal Op. at 14-16 (addressing grounds 1, 13, 14, 20). The Pennsylvania Supreme Court again denied Wallace's petition for allowance of appeal. Commonwealth v. Wallace, 242 A.3d 1246 (Pa. 2020) (table).

Wallace then filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 in the United States District Court for the

---

[5] <u>See</u> Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988).

Western District of Pennsylvania. (Doc. 1). The Western District subsequently transferred the petition to this Court. (Doc. 7).

## III. DISCUSSION

Wallace's petition raises 15 grounds for relief in clear and succinct fashion. (See Doc. 1 at 7-8). Several months after filing this petition, however, he lodged a sprawling "memorandum of law" in support of his petition that spans 165 pages and is often repetitive and difficult to follow. (See generally Docs. 23, 23-1). All of his claims involve allegations of ineffective assistance of counsel—in violation of the Sixth Amendment to the United States Constitution—at various stages of his prosecution, appeal, and postconviction proceedings. Most of the ineffective-assistance claims appear to have been presented and denied in state court.

Strickland v. Washington, 466 U.S. 668 (1984), sets forth a two-prong test to assess claims of ineffective assistance of counsel. First, counsel's performance must be deficient. Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S. at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" Shotts v. Wetzel, 724 F.3d 364, 375 (3d

Cir. 2013) (quoting Strickland, 466 U.S. at 688). However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689).

Second, counsel's deficient performance must have prejudiced the defendant. Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694).

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the Strickland claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was *unreasonable*." Harrington v. Richter, 562 U.S. 86, 101 (2011) (emphasis supplied); Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 547-48 (3d Cir. 2014). This "doubly" deferential standard of review means that, "so long as fairminded jurists could disagree

on the correctness of the state court's decision," a state court's determination that a <u>Strickland</u> claim lacks merit precludes federal habeas relief. Harrington, 562 U.S. at 101, 105.

Wallace raises 15 grounds for relief based on allegations of ineffective assistance of counsel. The Court will take each claim in turn.

### A.   <u>Ground 1 – Unlawful Arrest</u>

Wallace first asserts that his warrantless arrest was illegal and that his attorney was ineffective for failing to properly litigate this issue. He posits multiple reasons why his arrest was unlawful, including that he was held too long without a preliminary hearing, that his warrantless arrest violated Pennsylvania Rules of Criminal Procedure, and that his detention without bail on the unrelated simple assault charge was unconstitutional.

This claim was exhausted in state court. The PCRA court determined that Wallace's assertion of ineffective assistance was meritless because Wallace misunderstood the facts surrounding his detention and charges. <u>See</u> 10/26/18 PCRA Op. at 13-14. Essentially, the PCRA court reasoned that there was no ineffectiveness because Wallace was already being detained on the unrelated simple assault charge and he was conflating

being charged by criminal complaint with being "arrested." <u>Id.</u> The Superior Court added that, even if counsel had been ineffective regarding certain aspects of the preliminary hearing, "any such defects are immaterial as a jury found [Wallace] guilty." 11/13/19 PCRA Appeal Op. at 15.

There is nothing "unreasonable" about the state court's determination on this issue. At bottom, after a criminal defendant has been tried and found guilty of the crime or crimes charged, "any defect in the preliminary hearing is rendered immaterial." Commonwealth v. Sanchez, 82 A.3d 943, 984 (Pa. 2013). Thus, like the Superior Court reasoned, even if counsel had been ineffective in some way, Wallace cannot show prejudice as required by <u>Strickland</u>'s second prong.

Any contention by Wallace that more able counsel would have changed the outcome of his criminal proceedings by better litigating the preliminary aspects of his case is unconvincing. Even if successful challenges were made at the preliminary hearing stage, it would "not preclude the Commonwealth from re-filing charges and beginning the process anew." Commonwealth v. Stultz, 114 A.3d 865, 881 (Pa. Super. Ct. 2015). Wallace has presented no persuasive evidence or argument that, had the serious charges he was facing been dismissed due to early

procedural missteps, the Commonwealth would not have simply renewed the charges to correct those deficiencies. See id.; see also PA. R. CRIM. P. 544(A) (providing procedure for re-filing of charges after dismissal or withdrawal at, or prior to, preliminary hearing). Accordingly, the state court's determination on this ineffectiveness claim was not unreasonable.

### B.      Grounds 2, 5 – Illegal Search, Napue Violation

In Grounds 2 and 5, Wallace challenges the effectiveness of counsel for failing to properly litigate issues surrounding the DNA analysis, CODIS search, and the December 28, 2009 search warrant for the buccal swab. The gravamen of these claims, according to Wallace, is that Trooper Dick fabricated the CODIS hit and December 24, 2009 phone call from the forensic scientist in order to illegally obtain a search warrant. Wallace primarily points to the fact that the written report for the CODIS hit is dated December 29, 2009, whereas the affidavit of probable cause for the buccal swab search warrant is dated December 28, 2009.

As the state court correctly concluded, Wallace has fallen short of showing that there is any arguable merit to this claim and thus he cannot establish ineffectiveness. See 10/26/18 PCRA Op at 16-17. While it is true

that the written report from the forensic laboratory is dated December 29, this fact alone does not mean that Trooper Dick's statements in the December 28 affidavit of probable cause or on the witness stand are false. It is easily conceivable that the forensic scientist—upon discovering a CODIS hit during his analysis—immediately informed the state police by telephone about the possible identification of a suspect in what was at that time an open attempted murder investigation. Furthermore, Trooper Dick's assertion that his department was first notified verbally by Kist on December 24 never wavered. See, e.g., 10/26/18 PCRA Op. at 15-16; (Doc. 23-2 at 29, 31); (Doc. 23-2 at 62 (12/24/09 Summary of Investigation)).

Wallace spends numerous pages identifying other alleged minor inconsistencies in the record, but none of these purported inconsistencies establishes that Trooper Dick was lying. For example, Wallace points out that Sergeant William McAreavy—a superior officer whom Trooper Dick believed fielded the December 24 call from Kist—filed a report stating that he received Kist's call on December 30, 2009. (See Doc. 23-2 at 32). To be sure, this report is inconsistent with Trooper Dick's testimony and affidavit of probable cause. However, McAreavy's report was created on May 25, 2010, nearly five months after the DNA analysis at issue. (See id.). Trooper

Dick's version of events in the December 28 affidavit of probable cause, on the other hand, came just four days after when he claims his department received Kist's call. It is just as likely, if not more so, that McAreavy's report contained the wrong date of the phone call from Kist. In any event, it certainly does not prove that Trooper Dick was lying.

A <u>Napue</u>[6] violation requires knowing use of false testimony by the state to obtain a conviction; the falsity of the testimony cannot be in question. Consequently, Wallace has failed to show that counsel's conduct fell below an objective standard of reasonableness. The state court's determination on these Sixth Amendment claims was reasonable.

### C. <u>Ground 3 – Custodial Interrogations</u>

In his third ground for relief, Wallace challenges counsel's effectiveness in litigating the legality of the December 15 and December 21, 2009 custodial interrogations that were used in his trial. Wallace maintains that Attorney Palermo mishandled the suppression motion and that, if the interrogations had been suppressed, the outcome of his trial would have

---

[6] Napue v. Illinois, 360 U.S. 264 (1959) (holding that due process violation exists when a conviction is obtained through knowing use of false testimony by the state).

been different. The PCRA court determined that Attorney Palermo had moved to suppress the interrogations before trial and argued the issue on direct appeal, thus exhibiting no unprofessional conduct. 10/26/18 PCRA Op. at 24-25. The court also found that Wallace's factual assertions about not having counsel appointed for the unrelated simple assault charge were inaccurate. Id. at 25.

Once again, the state court's Strickland application was reasonable. Wallace continues to ignore the dispositive issue, *i.e.*, that simply because he claims he lacked counsel for the unrelated simple assault charge does not automatically implicate a Fifth Amendment violation during custodial interrogation for a different crime. See Wallace, 2016 WL 5417183, at *2-3. Regardless of the status of legal representation for the simple assault charge, Wallace waived his Miranda rights in writing and did not request an attorney at any time during his custodial interrogations about the (at that point) attempted murder. The state court's determination that this ineffective-assistance claim lacked merit was not unreasonable.[7]

---

[7] Wallace appears to raise other claims of ineffectiveness in this ground for relief regarding allegedly illegal transport, unconstitutionally excessive bail, and equal protection violations. (See Doc. 23 at 50-54). These issues were
*(footnote continued on next page)*

### D.      Ground 4 – Alleged "Rogue" or "Stealth" Juror

Wallace next claims that trial counsel was ineffective for failing to correct issues regarding juror number 69, Darrell Kaiser. Wallace contends that Kaiser had a conversation with the sister of Commonwealth witness Yvette Marks, and this contact prejudiced Wallace at trial.

It does not appear that Wallace raised this Sixth Amendment claim in his PCRA proceedings. See generally 10/26/18 PCRA Op. Consequently, he has failed to exhaust this ground for relief and must establish cause and prejudice to excuse the default. See Martinez v Ryan, 566 U.S. 1, 10 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Wallace, however, provides no basis to excuse his failure to exhaust this ineffective-assistance claim, and thus the claim is procedurally defaulted and unreviewable.  See id. at 9-10.

### E.      Ground 6 – Speedy Trial Issues

Wallace next contends that his trial counsel was ineffective for failing to raise a speedy trial claim. The PCRA court found Wallace had not shown

---

separately addressed by the PCRA court and denied. See 10/26/18 PCRA Op. at 26-28. The Court discerns no unreasonable application of Strickland regarding these ancillary claims.

unprofessional conduct, but that even if he had, he could not establish prejudice. 10/26/18 PCRA Op. at 33-34.

Wallace's arguments in this Court are difficult to follow. He seems to contend that his attorney requested continuances for nonessential reasons and that additional delay was caused by the failure to pay experts. (Doc. 23 at 70-71). He also appears to argue that he was prejudiced by the absence of expert witnesses, which is an entirely different claim that will be addressed below.

None of Wallace's arguments establish that the state court's determination on this claim was unreasonable. Most importantly, Wallace has failed to show how he was prejudiced by any alleged unprofessional conduct. Simply put, if counsel did not request continuances for nonessential reasons and experts were paid on time, there presumably would be no delay to complain of and no speedy trial claim to assert. Wallace, therefore, cannot contend that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694).

### F.   Ground 7 – Failure to Call Witnesses

Wallace lists six witnesses that he believes should have been called to testify at his trial. The PCRA court examined each witness and determined that Wallace's ineffective-assistance claim did not warrant relief. 10/26/18 PCRA Op. at 34-38. Ultimately, the PCRA court found that Wallace could not establish prejudice as required for a Sixth Amendment violation. Id. at 37-38. The Court agrees. Regardless of whether trial counsel's failure to utilize the witnesses Wallace identifies constituted unprofessional conduct, Wallace cannot show prejudice under Strickland's second prong.

Even assuming the non-medical witnesses testified exactly as Wallace wished, their proposed testimony would not create a reasonable probability that the outcome would have been different. That is because the evidence against Wallace was overwhelming. Wallace would need to overcome, among other evidence, the DNA evidence linking him to the crime scene, the cuts on his hands witnessed soon after the break-in, the testimony of Consuella's family members about Wallace's contentious relationship with her, testimony from Consuella's house guest who claims he heard Wallace's voice before the attack, and Wallace's initial

untruthfulness about his address and about owning a vehicle matching the description of a car spotted near the crime scene on the night of the attack.

The only witness testimony Wallace identifies that could possibly implicate prejudice would be from the two medical experts—Dr. Jeffrey Ellis and Dr. Jonathan L. Arden. According to Wallace, these experts' testimony could have provided the jury with alternate causation for Consuella's death, thereby disproving the first-degree murder charge.

The problem for Wallace is that neither Dr. Ellis nor Dr. Arden was willing or able to testify that the primary cause of death was anything other than the severe head injuries from the December 10 attack. Attorney Bayley explained that Dr. Ellis "was not willing to give an opinion that Stevens-Johnson Syndrome was the cause of [victim's] death; nor would any other defense expert." 10/26/18 PCRA Op. at 35 (alteration in original) (quoting Attorney Bayley's no-merit letter). And Dr. Arden concluded in his report that, although Consuella developed an infection during her hospitalization that led to Stevens-Johnson Syndrome,

> her brain injuries were devastating, and she was never able to recover neurologically from them. The various treatments and complications she experienced were all within the realm of known sequelae of such injuries and their required treatments. . . . [T]he underlying cause of her death

was the blunt impact head and brain injuries that compromised her neurological functioning; *all of the subsequent events, including complications related to treatments, were causally related to the [head and brain] injuries*. (None of the medical events in the records were etiologically independent processes that would interrupt the causal sequence initiated by the head injuries, *so none of them constitutes a competent intervening cause of death*.) Therefore I agree with the certification of cause of death as due to blunt head injuries; as these injuries were inflicted upon her by another, the manner of death is homicide.

(Doc. 23-2 at 27) (emphasis supplied). Dr. Arden's conclusions directly contradict Wallace's assertions that a hospital infection or Stevens-Johnson Syndrome was a supervening cause of Consuella's death. The PCRA court's determination on this claim, therefore, was more than reasonable.

## G.   Ground 8 – Failure to Impeach Witnesses

Wallace claims that counsel was ineffective for failing to impeach six different witnesses. The PCRA court reviewed each witness, assessed Wallace's claims about what his attorney allegedly did incorrectly, and determined that Wallace's ineffective-assistance claims lacked merit. 10/26/18 PCRA Op. at 38-40.

The Court finds that the state court's application of Strickland was reasonable. None of the lines of impeachment proffered by Wallace would

meet the prejudice standard for an ineffective-assistance claim. As to Trooper Dick, although Wallace believes he lied about the CODIS hit and probable cause for the buccal swab search warrant, that contention is adequately rebutted by other record evidence. See supra Section III(B).[8] The same reasoning applies to Wallace's impeachment claims regarding Kist.

Wallace next posits that the location of Consuella's death should have been raised to impeach Dr. Land and to challenge the sufficiency of his opinion regarding causation. (Doc. 23-1 at 6). The problem with this argument is that causation was never in question, as all three medical experts agreed that the severe head injuries were the factual and legal cause of Consuella's death. Merely hypothesizing that a jury may have disbelieved the Commonwealth's medical expert—without any countervailing expert evidence showing a different or supervening cause of death—does not meet the "reasonable probability" standard in Strickland's

---

[8] Wallace also seems to contend that proper impeachment would have led the jury to believe the DNA evidence was "tainted" and thus unreliable. (Doc. 23-1 at 3). This contention is illogical. Even if the jury believed that Trooper Dick lied about when he learned of the DNA matches, that would not affect the legitimacy and potency of the DNA evidence itself.

prejudice prong. "The likelihood of a different result must be substantial, not just conceivable." Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (citing Harrington, 562 U.S. at 104).

Wallace also challenges the lack of impeachment of William Tasker, who was present in the house at the time of the attack and who provided damaging testimony about hearing Wallace arguing with Consuella shortly before she was bludgeoned. Wallace points out that Tasker's statements to police on the day of the attack were much different than his trial testimony. Again, while Wallace's assertion may be correct, (see Doc. 23-2 at 49), even the most adept impeachment of Tasker with his prior statement would not implicate a reasonable probability of a different outcome. As noted above, Tasker's testimony was simply one piece in a deluge of evidence implicating Wallace as the assailant. Moreover, the prosecution repeatedly addressed this discrepancy during direct examination, (see Doc. 23-2 at 45, 47-48 (excerpts of direct examination of William Tasker)), mitigating any potential impeachment issues the discrepancy may raise in the minds of jurors.

None of the other witnesses Wallace identifies provided testimony that, if impeached, would have had any reasonable possibility of altering the

outcome of this case. Accordingly, the PCRA court's denial of this ineffectiveness claim was a reasonable application of <u>Strickland</u>.

### H.   <u>Ground 9 – Failure to Properly Litigate "Fear" Statement</u>

In his ninth ground for relief, Wallace maintains that his trial counsel was ineffective for improperly litigating the admissibility of statements made by Consuella that she feared Wallace. Wallace contends that these statements were inadmissible hearsay. The PCRA court found that Wallace's counsel had ably litigated this (and other) evidentiary issues prior to trial and on direct appeal, and thus there was no deficient performance. 10/26/18 PCRA Op. at 40-41. The Superior Court added that, even if there had been deficient performance, Wallace could not establish prejudice. 11/13/19 PCRA Appeal Op. at 15.

The state court's <u>Strickland</u> application was not unreasonable. First, as Wallace himself points out, Attorney McShane adroitly challenged the "fear" statement as inadmissible hearsay, and even filed a motion for reconsideration based on newly issued Pennsylvania Superior Court precedent. (<u>See</u> Doc. 23-1 at 26). Wallace faults Attorney Palermo for not incorporating Attorney McShane's arguments into his direct appeal.

However, even if Wallace is correct that Attorney Palermo's performance on direct appeal was deficient, Wallace cannot show prejudice.

Again, the challenged "fear" statement is just one small piece of the overwhelming evidence against Wallace. Furthermore, it is exceedingly unlikely that the Superior Court would have reversed Wallace's conviction based on this purported evidentiary error. See Commonwealth v. Lopez, 57 A.3d 74, 81 (Pa. Super. Ct. 2012) ("[O]ur standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.") (citation omitted); Commonwealth v. Manivannan, 186 A.3d 472, 480 (Pa. Super. Ct. 2018) ("[A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.") (citation omitted). On Wallace's direct appeal, the Superior Court itself explained—when denying other evidentiary challenges—that this was not a case "where the other evidence linking Wallace to the crime was weak." Wallace, 2016 WL 5417183, at *6. Thus, the Superior Court's determination that Wallace could not show prejudice was a reasonable application of Strickland.

## I.   <u>Ground 10 – Concession of Two Elements of Murder</u>

Wallace claims that Attorney Palermo was ineffective for conceding two elements of first-degree murder during closing arguments. The PCRA court determined that Wallace's assertions were factually inaccurate and that, on appeal, Attorney Palermo only conceded two of the first-degree murder elements for the sake of argument. 10/26/18 PCRA Op. at 41-42. The Superior Court added that Attorney Palermo had a reasonable basis for arguing that, if the jury were to find Wallace guilty, it should be of a lesser offense.  11/13/19 PCRA Appeal Op. at 15. It also found that even if Attorney Palermo's conduct was deficient, Wallace could not demonstrate prejudice. <u>Id.</u>

Wallace has not shown that the state court's application of <u>Strickland</u> was unreasonable. Attorney Palermo's strategy of attempting to convince the jury to forgo a first-degree murder conviction in favor of a lesser offense was eminently reasonable in light of the prosecution's case against Wallace. The evidence tying Wallace to the scene of the crime was overwhelming. Furthermore, Attorney Palermo's closing remarks are nearly all conditional; that is, he made statements to the effect of "if you believe the

Commonwealth that," indicating that he did not agree with the Commonwealth's theories or evidence. (See Doc. 23-2 at 51-52).

Finally, as the Superior Court reasoned, Wallace cannot show prejudice. The evidence presented by the Commonwealth to establish the first two elements of first-degree murder[9] was so strong that there is no reasonable probability that—even absent Attorney Palermo's closing remarks—the outcome would have been different. Consequently, the state court's Strickland analysis was not unreasonable.

## J.   **Ground 11 – Failure to Challenge Bill of Particulars**

Wallace argues that counsel was ineffective for not challenging the Commonwealth's "failure to prove the location of death." (Doc. 1 at 7). He claims that there is a discrepancy as to where Consuella passed away, and that this discrepancy affects causation. The PCRA court found that this claim was frivolous. 10/26/18 PCRA Op. at 43.

---

[9] The elements of first-degree murder are (1) an unlawful killing of a human being, (2) the defendant perpetuated the killing, and (3) the defendant "acted with malice and the specific intent to kill." Commonwealth v. Thomas, 54 A.3d 332, 335 (Pa. 2012) (citing 18 PA. CONS. STAT. §2502(a)).

This Court agrees. The location of where Consuella ultimately died has little, if any, relevance to the murder charges Wallace faced. Wallace contends that the discrepancy affects the chain of causation, but he provides no evidentiary support for this conclusion beyond his own theories about what may have caused Consuella's death. As thoroughly explained above, every medical expert verified that Consuella's severe head injuries were the factual and legal cause of her death. Whether there were other contributing factors (like a hospital-acquired infection or Stevens-Johnson Syndrome) does not matter, because none of those factors were supervening causes of death that would break the chain of causation.

Wallace also maintains that the Commonwealth had to prove the location of death as set out in the bill of particulars in order to convict him of first-degree murder, but that is simply incorrect. Although the bill of particulars may restrict the Commonwealth as to its prosecution, it does not create a different burden of proof for conviction of an offense. See Commonwealth v. Delbridge, 771 A.2d 1, 4 (Pa. Super. Ct. 2001) ("The function of a bill of particulars . . . is to give notice to the accused of the offense charged in order to permit him to prepare a defense, avoid surprise, and be placed on notice as to any restrictions upon the Commonwealth's

proof."). The Commonwealth charged Wallace with, among other things, first-degree murder, and thus it had to prove the elements of that offense. None of those elements is the location of death. See Thomas, 54 A.3d at 335. Thus, while the Commonwealth could not expand its prosecution beyond the parameters of the bill of particulars, the bill of particulars does not create additional elements for the prosecution to prove at trial. See Delbridge, 771 A.2d at 4. Wallace's argument, therefore, is meritless, and it is well settled that counsel cannot be deemed ineffective for failing to raise a meritless claim. See Preston v. Superintendent Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018) (citation omitted).

### K.   **Ground 12 – Improper Jury Instruction**

In his twelfth ground for relief, Wallace claims that the trial court improperly instructed the jury regarding first-degree murder and his attorney failed to correct the defect. Wallace asserts that the trial court only required the jury to find that Consuella "is dead" for the first element, rather than—as provided by the first-degree murder statute—that there was an "unlawful killing." (Doc. 23-1 at 41). This error, Wallace argues, relieved the Commonwealth of its burden to prove causation; in other words, even if the jury believed something other than the head injuries caused Consuella's

death (for example, a cause of death that was not "unlawful" like a hospital-acquired infection), they could still convict Wallace of first-degree murder so long as they found that Consuella was dead. The PCRA court reviewed the jury instructions, found "no erroneous instruction" was given by the trial court, and deemed the claim baseless. 10/26/18 PCRA Op. at 44.

The state court's determination on this claim was not unreasonable. A thorough review of the trial court's first-degree murder instructions shows that they tracked Pennsylvania's standard criminal jury instructions for first-degree murder nearly verbatim. Compare (Doc. 34-8 at 78-80), with PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTION §15.2502A (3d ed.). Wallace's argument that the court's instructions relieved the Commonwealth of its burden to prove causation is unpersuasive; the trial court specifically instructed the jury that they must find that "the defendant killed [Consuella]" and that he did so with "the specific intent to kill and with malice." (Doc. 34-8 at 79). The trial court, moreover, took pains to explain that the jury must find that Wallace's conduct "was the direct cause of death," meaning that it was a "direct and a substantial factor in bringing about the death." (Id. at 77). There was no basis for Attorney Palermo to object to this first-degree murder instruction, and thus no ineffective

assistance for failing to object. See Preston, 902 F.3d at 379 (citation omitted).

### L.   Ground 13 – Failure to Properly Litigate Insufficient Evidence

Wallace next argues that his counsel was ineffective for failing to properly litigate the sufficiency-of-the-evidence claim on direct appeal. The PCRA court found that Wallace's arguments about why his attorney was ineffective were either already litigated on appeal or meritless. 10/26/18 PCRA Op. at 45-46.

Once again, the PCRA court's Strickland application was reasonable. Wallace's assertions in ground 13 are largely a reiteration of many of his previous arguments, including such issues as Trooper Dick's testimony, the buccal swab search warrant, Tasker's credibility, Attorney Palermo's alleged concession of first-degree murder elements, the bill of particulars, the jury instructions, and causation of Consuella's death. (See Doc. 23-1 at 49-57, 60-64). All of these issues have been addressed individually above,

and they do not together create an independent ineffective-assistance claim.[10]

## M.  Ground 14 – Unlawful Seizure of Vehicle

Wallace's fourteenth ground for relief asserts that his attorney, on appeal, failed to pursue a challenge to the search of his vehicle.  The PCRA court found that Wallace's argument was meritless, noting that the trial court viewed the challenge as unpersuasive and that Attorney Bayley found the issue groundless as well. 10/26/18 PCRA Op. at 49-50. The PCRA court additionally determined that Wallace's argument regarding the Commonwealth needing to establish ownership prior to obtaining a search warrant was incorrect. Id. at 50.

There was no unreasonable application of Strickland here. Wallace's contention that police had to prove ownership of the vehicle prior to

---

[10] Wallace appears to combine another ineffectiveness claim into Ground 13 regarding his attorney's failure to challenge the weight of the evidence on appeal. (Doc. 23-1 at 57-59). The PCRA court addressed this claim independently and found that it was meritless. 10/26/18 PCRA Op. at 46-49. The Court discerns no unreasonable application of Strickland. A weight-of-the-evidence claim had little to no chance of success on appeal in light of the overwhelming evidence against Wallace. Counsel cannot be deemed ineffective for failing to raise a meritless argument. See Preston, 902 F.3d at 379 (citation omitted).

obtaining a search warrant is not legally tenable. Thus, Attorney Palermo could not be found ineffective for failing to continue to pursue a meritless evidentiary challenge on appeal. See Preston, 902 F.3d at 379. To the extent that Wallace raises additional arguments for the illegality of the search and ineffectiveness of counsel that were not raised in state court, (see Doc. 23-1 at 64-67), those claims are procedurally defaulted.

### N.   **Ground 15 – Failure to Challenge DNA Test Kit Results**

In his final ground for relief, Wallace maintains that his PCRA counsel was ineffective for failing to investigate and address patent issues surrounding the DNA test kit that was used in his prosecution. The PCRA court found that Wallace had defaulted on this claim because he had not raised it in his *pro se* petition, in response to Attorney Bayley's no-merit letter, or in response to the PCRA court's notice of intention to dismiss the PCRA petition. The Superior Court—on PCRA appeal—agreed that Wallace had defaulted on this claim but denied it on the merits in the alternative. 11/13/19 PCRA Appeal Op. at 16. The court found that "whether a patent is valid has no bearing on the accuracy of the DNA kit results inculpating [Wallace]. A patent simply is the right to exclude others from using the invention." Id. (citing 35 U.S.C. §154).

Wallace appears to challenge the validity of the DNA test results in his case due to purported shortcomings of the "Promega PowerPlex 16" system, the kit used by the state police laboratory in his prosecution. (See Doc. 1 at 8). He asserts that, due to "lack of enablement," the Promega PowerPlex 16 system's results are invalid and an evidentiary hearing should be held on this issue. (Doc. 23-1 at 69-71). Wallace concedes that "trial counsel would not have discovered this issue" because the case on which Wallace relies—Promega Corp. v. Life Technologies Corp., 773 F.3d 1338 (Fed Cir. 2014), rev'd, Life Technologies Corp. v. Promega Corp., 137 S Ct. 734 (2017)—was not decided until late 2014. Wallace instead claims that his PCRA counsel was ineffective for failing to research this issue and present it during state postconviction proceedings.

Wallace's argument fails, however, because there is no constitutional right to counsel in state postconviction proceedings. See Coleman, 501 U.S. at 752 (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)). And "where there is no constitutional right to counsel[,] there can be no deprivation of effective assistance." Id. (citing Wainwright v. Torna, 455 U.S. 586 (1982)). Wallace's contention that his PCRA counsel was ineffective for failing to

investigate and raise this DNA test kit issue, therefore, does not warrant habeas relief.

## IV.   CONCLUSION

For the foregoing reasons, Wallace's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied. The Court also finds no basis to issue a certificate of appealability, as Wallace has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. §2253(c).

An appropriate Order follows.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**Dated: January 21, 2022**
21-0340

- 34 -